**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JFMT PROPERTIES, LLC** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 5:17-CV-00859** |
| **WESTERN HERITAGE INSURANCE** | § | **(JURY)** |
| **COMPANY AND ADAM CABRERA** | § | |
| **Defendants** | § | |

---

**DEFENDANT WESTERN HERITAGE INSURANCE COMPANY'S
NOTICE OF REMOVAL**

---

TO THE HONORABLE COURT:

Pursuant to 28 U.S.C. Sections 1441 and 1446, Defendant Western Heritage Insurance Company ("Western Heritage") in Cause No. 2017CI13801, pending in the 407th Judicial District Court of Bexar County, Texas, files this Notice of Removal from that court to the United States District Court for the Western District of Texas, San Antonio Division, on the basis of diversity of citizenship and amount in controversy and respectfully shows:

**I.
FACTUAL BACKGROUND**

1.1     Western Heritage issued Commercial Property Policy No. SCP1513917, effective August 15, 2015 to August 15, 2016, to JFMT Properties LLC (the "Policy"). The Policy provided coverage for a commercial property constructed around 1974 and located at 8026 Vantage Drive, San Antonio, Texas ("the Property").

1.2     In breach of the terms of the Policy, Plaintiff through its attorney, on or about December 1, 2016, reported a claim for alleged hail or wind damage to the Property which

**NOTICE OF REMOVAL - PAGE 1**

reportedly occurred on April 12, 2016.  *See* Plaintiff's petition at ¶¶ 11-12.  Western Heritage

assigned Claim No. W1014439 to the claim and assigned the investigation of the claim to

Wardlaw Claims who then assigned the investigation to Adam Cabrera ("Cabrera").  Cabrera

inspected the Property with Plaintiff's roofing contractor on December 15, 2016.  *Id.* at ¶ 13.

Cabrera prepared an estimate for replacement of the roof on the Property. *Id.* at ¶¶ 13-15.

1.3     Western Heritage corresponded with Plaintiff's counsel regarding the inspection

and tendered payment for the claim to Plaintiff, through its counsel, for $143,877.49.  *Id.* at ¶ 15.

Plaintiff alleges that Cabrera, who was without authority to make claim payments or decisions,

told Plaintiff that his estimate would include "everything" under the SPF roofing system.  *Id.* at ¶

16.  Plaintiff's Petition then states that, after Cabrera, who is not an engineer, prepared his

estimate, Plaintiff obtained core sampling results showing there were two layers of 3-ply roofing

under the foam roof and that the 3-ply roofing layers were over a concrete decking.  *Id.* at ¶¶16-

17.

1.4     Plaintiff further alleges that Plaintiff obtained an estimate from Guerra-Prats for

$1.3 million and sent the estimate to Cabrera.  *Id.* at ¶ 19.  Western Heritage retain Donan

Engineering to reinspect the Property.  *Id.* at ¶ 20.  Donan Engineering prepared a report

recommending removal of the two additional layers of roofing "*to* the deck."  *Id.* at ¶ 21

(emphasis added).  Cabrera revised his estimate to include the removal of the two additional

layers of 3-ply roofing *to* the deck as recommended in the engineering report.  *Id.* at ¶ 22.

Cabrera's revised estimate was for a replacement cost value ("RCV") of $283,042.40 and an

actual cash value payment ("ACV") of $246,125.74.  *Id.*

1.5     Plaintiff now sues Defendants for alleged contractual and extra-contractual

claims, including claims of alleged Insurance Code violations against Cabrera, individually.

**NOTICE OF REMOVAL - PAGE 2**

Plaintiff generically asserts that Cabrera refused to perform a reasonable investigation despite admitting that Cabrera inspected the Property with Plaintiff's roofing contractor or describing what about Cabrera's inspection was unreasonable or inadequate.   Plaintiff complains that Cabrera's initial estimate did not include removal of the roofing layers under the foam roofing system which were not made known to Cabrera until after Plaintiff's roofer provided core sampling results.   *Id.* at § IX.   In short, Plaintiff's Petition claims Cabrera is individually liable for damages which are purely contractual in nature because Cabrera, not an engineer, did not telepathically determine there were additional layers of roofing on the 42 year-old building and include those in his initial estimate.

1.6     On July 28, 2017, Plaintiff JFMT Properties, LLC ("Plaintiff" or "JFMT") filed its Original Petition in the matter styled *JFMT Properties, LLC v. Western Heritage Ins. Co.,* Cause No. 2017CI13801, in the 407th Judicial District Court of Bexar County, Texas, in which Plaintiff asserts Defendants wrongfully denied Plaintiff's claims for damages to its commercial property under a Commercial Property Insurance Policy issued by Defendant Western Heritage arising from alleged property damage reportedly caused by a storm that struck the San Antonio, Texas area.   In addition, Plaintiff also asserts various boilerplate claims against both Defendants under the Texas Insurance Code and DTPA.

1.7     Plaintiff served Western Heritage with the citation and Plaintiff's Original Petition on August 7, 2017.   Defendant Cabrera has not been served with citation.

1.8     Defendant Western Heritage files this Notice of Removal within the thirty-day time period required by 28 U. S. C. Section 1446(b).   In addition, this Notice of Removal is being filed within one year of the commencement of this action.

**NOTICE OF REMOVAL - PAGE 3**

1.9     All pleadings, process, orders, and other filings in the state court action are attached to this Notice as required by 28 U.S.C. §1446(a).   A copy of this Notice is also concurrently being filed with the state court and served upon the Plaintiff.

1.10    As required by 28 U.S.C. § 1446(a), attached hereto as Exhibit "1" is a true and correct copy of the state court's docket sheet.  A copy of all service of process and all pleadings filed with the Bexar County District Clerk are attached as Exhibit "2."

## II.
## BASIS FOR REMOVAL

2.1     Removal is proper based upon diversity of citizenship under 28 U.S.C. §§ 1332(a)(1), 1441(a), and 1446.

### A.     THE CORRECT PARTIES ARE OF DIVERSE CITIZENSHIP

2.2     Upon information and belief, and as plead in his Original Petition, Plaintiff was at the time the lawsuit was filed, a Texas Limited Liability Company and a citizen of Texas. *See* Plaintiff' Original Petition at p.2.

2.3     Defendant, Western Heritage, is incorporated under the laws of the State of Arizona, with its principal place of business in Scottsdale, Arizona. Western Heritage is therefore not a citizen of the State of Texas for diversity purposes.

2.4     Upon information and belief, Defendant Adam Cabrera ("Cabrera") is, and was at the time the lawsuit was filed, a resident and citizen of the State of Texas. With respect to the claims against Cabrera, however, it is Western Heritage's position that he has been improperly joined in this action.  Therefore, as explained below, the Texas citizenship of Cabrera should be disregarded for the purposes of evaluating diversity in this matter.

**NOTICE OF REMOVAL - PAGE 4**

**B.**     **CABRERA WAS IMPROPERLY JOINED AND SHOULD BE DISMISSED**

**(1)     Improper Joinder Standard**

2.5     As an initial matter, Western Heritage notes that Texas federal courts have begun to recognize the "popular tactic" of naming non-diverse insurance adjusters in an attempt to defeat diversity jurisdiction in mass hail/wind storm litigation.  *Gonzalez v. State Farm Lloyds*, No. 4:15-CV-305-A, 2015 WL 3408106, at *3 (N.D. Tex. May 27, 2015) (McBryde, J.); *Lopez v. United Prop. & Cas. Ins. Co.*, No. 3:16-CV-0089, 2016 WL 3671115, at *3 (S.D. Tex. July 11, 2016); *see also Dizdar v. State Farm Lloyds, et al;* No. 7:14-CV-00402 in the United States District Court for the Southern District of Texas, McAllen Division (Alvarez, J.) ("The Court has observed an unacceptable and systematic practice by Plaintiffs' counsel—the Mostyn Law Firm—of filing numerous and unfounded claims.  In many of these cases, the only issue truly in dispute is whether or not [the insurer] adequately estimated and paid Plaintiffs according to the terms of the contract.").

2.6     A party may establish improper joinder when it shows (1) actual fraud in the pleading of jurisdictional facts, or (2) the plaintiff's inability to establish a state-law claim against the non-diverse defendant.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004), cert. denied, 544 U.S. 992 (2005); *Griggs v. State Farm Lloyd's*, 181 F.3d 694, 699 (5th Cir. 1999). Here, Western Heritage would show that "there is no reasonable basis for the district court to predict that the [plaintiff] might be able to recover against an in-state defendant, individually," which is the test adopted by the Fifth Circuit in *Smallwood*.  385 F.3d at 573.

2.7     The Court may conduct the *Smallwood* test using a Rule 12(b)(6) analysis of the Petition to determine whether Plaintiff states a claim, or the Court may use a summary inquiry to identify discrete and undisputed facts that would preclude recovery.  *See id.*  The failure to

**NOTICE OF REMOVAL - PAGE 5**

specify a legal and factual basis for a claim against a non-diverse party constitutes a failure to state a claim and results in fraudulent joinder of that party. *Waters v. State Farm Mut. Auto. Ins. Co.,* 158 F.R.D. 107, 109 (S.D. Tex. 1994). Additionally, "merely *pleading* a valid state law claim . . . against the resident defendant does not mean that the joinder of the resident defendant is not fraudulent . . . ." *Hornbuckle v. State Farm Lloyd's*, 385 F.3d 538, 542 (5th Cir. 2004).

2.8    In the context of joinder of non-diverse insurance adjusters, federal courts in Texas have required plaintiffs "to allege specific actionable conduct by the adjuster and to distinguish claims against the adjuster from generic, conclusory, statute-tracking claims against the insurer." *Okenkpu v. Underwriters Texas Lloyd's*, Civ. A. H-11-2376, 2012 WL 1038678 at *7 (S.D. Tex. Mar. 27, 2012) (citing *Centro Cristiano Cosecha Final, Inc. v. The Ohio Casualty Ins. Co.,* Civ. A. No. H–10–1846, 2011 WL 240335, *14 (S.D.Tex. Jan.20, 2011); *Gonzales v. Homeland Ins. Co. of New York,* Civ. A. No. H–11–123, 2011 WL 3104104 (S.D.Tex. July 25, 2011); *Emmanuel Deliverance Temple of Refuge, Inc. v. Scottsdale Ins. Co.,* Civ. A. No. H–10–4162, 2011 WL 2837588 (S.D.Tex. July 18, 2011); *Jiminez v. Travelers Indem. Co.,* Civ. A. No. H–09–1308, 2010 WL 1257802, *6 (S.D.Tex. Mar.25, 2010); *Glen Willow Apartments v. Lexington Ins. Co.,* Civ. A. No. H–10–2095, 2011 WL 1044206, *3 (March 16, 2001)). Fraudulent joinder of a non-diverse party exists when 1) the plaintiffs have fraudulently pleaded that an opposing party is non-diverse, or 2) the plaintiffs have not stated a claim against the non-diverse party. *International Energy Ventures Mgmt., LLC v. United Energy Group*, *Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc).

> **(2)** **There is no *reasonable basis* for the Court to predict a possible recovery by Plaintiff against Cabrera individually.**

2.9     Plaintiff fails to state a claim where "there is no possibility of recovery by the plaintiff against a non-diverse defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against a non-diverse defendant."   *Int'l Energy Ventures*, 818 F.3d at 199-200 (internal quotes and alterations omitted).  There must be a *reasonable* basis; a mere theoretical possibility of recovery under Texas law is insufficient to preclude a finding of fraudulent joinder.   *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000).

2.10    "[T]o state a valid state law cause of action, Plaintiff's' Petition must demonstrate a 'factual fit' between the allegations and the pleaded theory of recovery." *See First Baptist Church of Mauriceville, Texas v. Guideone Mut. Ins. Co.*, 2008 WL 4533729 (E.D.Tex. 2008 (not designated for publication) (Hines, J.) *See also Terrell v. Ace European Group Ltd.*, No. 1:09-cv-506, slip op. at 12 (E.D. Tex. Feb. 24, 2010) (citing *Griggs v. State Farm Lloyd's*, 181 F.3d 694, 700 (5th Cir. 1999)). Plaintiff's Original Petition does not.  Mere recitals of the elements of a cause of action supported by conclusory statements are insufficient to establish a state law cause of action. *See Ashcroft v. Iqbal*, 129 S.Ct 1297 (2009). It is not the law in Texas that a reasonable probability of recovery exists against an adjuster or TPA every time a plaintiff obtains a higher estimate which does not take into account coverage and policy terms.  This, however, is precisely what it alleged against Cabrera individually.  As pleaded, these claims are not actionable, asserted only to attempt to defeat diversity jurisdiction, and should be dismissed. Plaintiff's claims against Cabrera do not state an actionable claim against them.  The allegations are groundless and alleged solely to improperly attempt to defeat diversity. "Allegations merely

**NOTICE OF REMOVAL - PAGE 7**

asserted against 'Defendants,' without alleging what facts are attributed to the adjuster individually as opposed to the insurance company, do not provide a reasonable basis for recovering from the adjuster."  *TAJ Properties, LLC. v. Zurich Am. Ins. Co.,* 2010 WL 4923473, *4 (S.D. Tex. 2010) (not designated for publication).

> **(i)    Plaintiff's Claims Against Cabrera Are Generic, Conclusory Assertions Which Do Not Meet the Federal Pleading Standard.**

2.11    In determining whether there is "no possibility" of recovery, the Court conducts a Federal Rule of Civil Procedure 12(b)(6) "type" analysis.  *Int'l Energy Ventures*, 818 F.3d at 200.  This analysis requires the Court to determine whether plaintiffs' original state court petition states a claim against the non-diverse party under the *federal* pleading rules.  *Id.* at 203; *see also Lopez*, 2016 WL 3671115, at *2 (the Court looks to the plaintiffs' state court pleadings at the time of removal to determine whether removal is proper).  Thus, to state a claim, plaintiffs must plead facts sufficient to satisfy the requirements of Federal Rules of Civil Procedure 8 and 9. *Int'l Energy Ventures*, 818 F.3d at 203.  Plaintiff failed to adequately plead its claims against the non-diverse defendants under the Federal Rules.

2.12    Specifically, Plaintiff alleges a cause of action against Cabrera individually, for purported violations of Insurance Code Chapter 541, which prohibits Unfair Methods of Competition and Unfair or Deceptive Acts or Practices.  Given Chapter 541 proscribes unfair and deceptive practices, Courts have applied the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) to determine whether plaintiffs have stated a claim under Chapter 541.  *See*, *e.g.*, *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F.Supp.2d 811, 815 (S.D. Tex. 2011) (Rule 9(b) applies to Texas Insurance Code claims "where the gravamen of the claim is fraud even though the theory supporting the claim is not technically fraud" (internal quotes omitted));

**NOTICE OF REMOVAL - PAGE 8**

*Burton v. Companion Prop. & Cas. Ins. Co.*, W-14-CV-054, 2014 WL 12490005, at *4 (W.D. Tex. July 29, 2014) (claims alleging violations of the Texas Insurance Code are subject to the requirements of Rule 9(b)); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998) (same).

2.13    The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) require Plaintiff to specifically state the alleged fraudulent statements, the speaker's identity, when and where the statements were made, and *why* the statements were fraudulent.   *KLLM Transp. Services v. Marsh USA, Inc.*, 450 Fed.Appx. 406, 410 (5th Cir. 2011); *see also U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (Rule 9(b) "'requires that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud'").   But rather than setting forth the "who, what, when, where, and how" of Plaintiff's alleged fraudulent acts, Plaintiff merely makes conclusory allegations of misrepresentations, failure to disclose, and other alleged unfair and deceptive practices such as inadequately performing the investigation at issue or reportedly promising to pay for everything under the foam roofing system when Cabrera had no authority to make such promise and Plaintiff's own pleadings show that core sampling showing there were multiple roofing layers was not done until after Cabrera wrote his initial estimate.   Further, after an engineer recommended replacement of the three total roofing system layers to the decking, Cabrera revised his estimate accordingly.

2.14    Just as in the *Okenkpu* case cited above, Plaintiff's Original Petition fails to specify any statements which are actionable misrepresentations or are fraudulent or why they are fraudulent or misrepresentative. *Okenkpu*, 2012 WL 1038678 at *6.   Insurers, as well as adjusters, have the right to estimate damages based on their investigation, skill, and training without being sued for alleged Insurance Code violations just because public adjusters and

**NOTICE OF REMOVAL - PAGE 9**

lawyers blanket the area and promise "new roofs" to property owners. *Texas Mut. Ins. Co. v. Ruttiger*, 265 S.W.3d 651, 661 (Tex.App.-Houston [1st Dist.] 2008), citing *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex.App.-Dallas 2005). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham v. State Farm Mutual Automobile Ins. Co.*, 103 F.3d 456, 459 (5th Cir.1997), citing *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 600 (Tex.1993).

2.15    Briefly summarizing statutory language and common law causes of action, as Plaintiff did here, is not the same as pleading *actionable facts* to which a cause of action should apply. As several courts have noted, many of the commonly asserted causes of action against third party, independent insurance adjusters—just like those here—are not actionable. Specifically:

- Plaintiff cannot recover against Cabrera under Insurance Code Section 541.060(a)(2)(A), which requires insurers to attempt a reasonable settlement of a claim when liability is reasonably clear. *Mainali Corp. v. Covington Specialty Ins. Co.*, 2015 WL 5098047 at *4 (N.D. Tex. Aug. 31, 2015) (citing *One Way Invs., Inc. v. Century Sur. Co.*, 2014 WL 6991277 at*4 (N.D. Tex. Dec. 11, 2014)); *see also Meritt Buffalo Events Ctr., LLC v. Cent. Mut. Ins. Co.,* No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016). This is the case because an adjuster lacks settlement authority on behalf of the insurer. *Id.*

- Plaintiff cannot recover against Cabrera under Insurance Code Section 541.060(a)(4), which requires insurers to (A) affirm or deny coverage, or (B) reserve rights, within a reasonable time. *Lopez*, 2016 WL 3671115, at *4 (citing *One Way Invs.*, 2014 WL 6991277, at *5). Not only does an adjuster lack authority to affirm or deny coverage, an adjuster does not have any obligation to provide a reasonable explanation of the insurer's coverage position. *Id.*

- Similarly, Plaintiff cannot recover against Cabrera under Insurance Code Section 541.060(a)(7), which prohibits insurers from refusing payment without conducting a reasonable investigation. *See*, *e.g.*, *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F.Supp.3d 721, 724. It is the insurance company that "refuses" to pay a claim, not the adjuster.

**NOTICE OF REMOVAL - PAGE 10**

Because Plaintiff's Original Petition fails to state any specific, actionable conduct on Cabrera's part, there is no *reasonable basis* for the Court to predict that Plaintiff might be able to recover against Cabrera individually, as opposed to recovering on its contractual claims against Western Heritage. *Griggs*, 181 F.3d at 699-701; *Keen,* 875 F.Supp.2d at 686 (holding that, because the plaintiff's claims against the adjuster were identical to his claims against the insurer, the plaintiff failed adequately to state a claim against the adjuster); *Weldon Contractors, Ltd. v. Fireman's Fund Ins. Co.*, 2009 WL 1437837, at *3-4 (N.D. Tex. 2009) (finding allegations that listed Insurance Code provisions and asserted that "Defendants" violated such provisions "are really legal conclusions couched as factual allegations"); *Lakewood Chiropractic Clinic*, 2009 WL 3602043, at *3 (S.D. 2009) (holding that "near verbatim recitations of portions of Chapters 541 and 542 of the Texas Insurance Code" without "facts illustrating what actions are attributable to [the adjuster] individually" does not provide a reasonable basis of recovery).

### (ii)    Plaintiff's Claims Against Cabrera are Indivisible From Those Asserted Against Western Heritage.

2.16    In addition, Plaintiff's alleged Insurance Code claims against Cabrera fail because Cabrera's alleged violations are indistinguishable from the purported violations allegedly committed by Western Heritage. "[W]hen an adjuster's actions 'can be accomplished by [the insurer] through an agent' and when the claims against the adjuster are identical to those against the insurer, the adjuster's actions 'are indistinguishable from [the insurer's] actions' and hence are insufficient to support a claim against the adjuster."  *Keen v. Wausau Business Ins. Co.*, 875 F.Supp.2d 682, 686 (S.D. Tex. 2012) (Harmon, J.).  Texas law is clear that to be liable for alleged Insurance Code violations, the adjuster, individually, must have committed the violation that caused the harm. *Frisby v. Lumberman's Mut. Cas. Co.*, 500 F.Supp.2d 697 (S.D. Tex.

**NOTICE OF REMOVAL - PAGE 11**

2007).   Thus, to state claims of Insurance Code violations against non-diverse insurance adjusters, plaintiffs must "allege specific actionable conduct by the adjuster and to distinguish claims against the adjuster from generic, conclusory, statute-tracking claims against the insurer." *Okenkpu v. Allstate Texas Lloyd's*, Civ. A. H-11-2376, 2012 WL 1038678 at *7 (S.D. Tex. Mar. 27, 2012) (citing *Centro Cristiano Cosecha Final, Inc. v. The Ohio Casualty Ins. Co.,* Civ. A. No. H-10-1846, 2011 WL 240335, *14 (S.D. Tex. Jan. 20, 2011)).

2.17    As noted above, Plaintiff fails to offer any specific facts in support of its claims for damages against Cabrera as distinct from Plaintiff's claims for damages asserted against Western Heritage, and therefore fails to state a viable state law claim against Cabrera individually. *See Okenkpu*, 2012 WL 1038678 at *7; *Keen v. Wausau Business Ins. Co.*, 875 F.Supp.2d 682 (S.D.Tex. 2012) (Harmon, J.) ("[W]hen an adjuster's actions 'can be accomplished by [the insurer] through an agent' and when the claims against the adjuster are identical to those against the insurer, the adjuster's actions 'are indistinguishable from [the insurer's] actions' and hence are insufficient to support a claim against the adjuster.") (citing *Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co.*, 2011 WL 240335, *14 (S.D. Tex. 2011)).

2.18    Here, Plaintiff's only factual allegations that apply specifically to Cabrera are the generic and conclusory allegations that Cabrera promised to pay for "everything" under the foam roofing system and that he conducted a substandard investigation and underscoped Plaintiff's damages claim which resulted in an underpayment to Plaintiff by Western Heritage. *See* Plaintiff's Original Pet.  Again, Plaintiff's Petition expressly concedes that Cabrera inspected the Property with Plaintiff's roofing contractor and then with an engineer, and that Western Heritage issued payment to Plaintiff as to the actual cash value of the claim based on the engineer's

**NOTICE OF REMOVAL - PAGE 12**

ultimate recommendation.  The Fifth Circuit has made it clear that simply submitting a higher repair estimate is not evidence of wrongdoing by the adjuster. *Bias v. Standard Guaranty Ins. Co.*, 385 Fed.Appx. 398, 2010 WL 2802449 (5th Cir. 2010) (not designated for publication).

2.19    Further, without asserting facts as to how an act or omission, committed by Cabrera, individually, constituted an actionable violation of the Texas Insurance Code resulting in damages which are independent of the damages reportedly caused by Western Heritage's failure to pay Plaintiff's claim, Plaintiff's claims cannot survive dismissal. *See Twombly*, 550 U.S. at 555. Generic allegations will not support an arguable basis of individual liability against the individual Non-Insurer Defendants. *See Caballero v. State Farm Lloyds*, 2003 WL 23109217 (S.D.Tex. 2003) (Hudspeth, J.) (not designated for publication).  Texas law is clear that to be liable for alleged Insurance Code violations, the adjuster, individually, must have committed the violation that caused the harm which is independent of damage caused by a contractual breach by PAIC. *Frisby v. Lumberman's Mut. Cas. Co.*, 500 F.Supp.2d 697 (S.D.Tex. 2007).  Here, the alleged harm is denial or underpayment of the claim by Western Heritage.  *See Plaintiff's* Original Pet. Plaintiff's assertion of damages against Cabrera, which reportedly led to such underpayment, are indivisible from its claims for damages alleged against Western Heritage.

**(iii)    Plaintiff's Claims Against Cabrera are Barred by the Independent Injury Rule.**

2.20    Improper joinder exists in the pleadings before this Court as there is no reasonable basis for this Court to predict an individual liability finding against Cabrera as Plaintiff has not alleged any injury caused by Cabrera independent of the damages sought for Western Heritage's alleged failure to pay the claim.  In Texas, "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury

independent of those that would have resulted from a wrongful denial of policy benefits." *See, e.g., Parkans Int'l v. L.L.C.. v. Zurich Ins.*, 299 F.3d 514, 519 (5th Cir. 2002); *Provident American Ins. Co. v. Casteneda*, 988 S.W.2d 189 (Tex. 1999); *DaimlerChrysler Ins. Co. v. Apple*, 265 S.W.3d 52, 70 (Tex. App. – Houston [1st Dist.] 2008), *aff'd in part and rev'd on other grounds*, 297 S.W.3d 248 (2009). Plaintiff must demonstrate both extreme conduct and damages that are independent of the benefits of the insurance policy. *See United Serv. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App. – San Antonio 2003, no pet.) (jury verdict for extra-contractual claims reversed because of lack of proof of damages except those stemming from denial of claim); *Castaneda*, 988 S.W.2d 189, 198–99 (Tex. 1998); *Lexington Ins. Co. v. JAW The Pointe, LLC*, 2013 WL 3968445 (Tex.App.--Houston [14th Dist.] 2013, pet. filed) (citing *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005); *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex 2002)).

2.23   The Texas Supreme Court articulated the independent injury rule in 1999, in *Castaneda*, involving a dispute between an insured and her insurer over a claim for surgery expenses. The jury found liability and damages for loss of benefits, loss of credit reputation, attorney's fees, and additional damages for "knowing" conduct. *Id*. at 192. The Texas Supreme Court reversed and ruled that an extra-contractual claim must include proof of causation of damages independent of the policy claim. *Id*. at 198-99. After noting that the only actual damage found by the jury (other than loss of policy benefits) was loss of credit reputation, it explained that "any loss of credit reputation stemmed from the denial of benefits, not from any failure of [the insurer] to communicate with [the insured] or to properly investigate her claim." *Id*. Thus, the extra-contractual claim could not stand.

**NOTICE OF REMOVAL - PAGE 14**

2.24    The Fifth Circuit likewise recognizes that *Castaneda* means that "[t]here can be no recovery for mishandling claims unless the complained of acts or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans Int'l v. L.L.C. v. Zurich Ins.*, 299 F.3d 514, 519 (5th Cir. 2002).   In *Parkans*, Zurich Insurance Company issued a commercial package policy to Parkans International, L.L.C.   A third-party defrauded Parkans causing it a financial loss of approximately $1,000,000. *Id.* at 515. Zurich denied the claim.   Parkans filed suit against Zurich seeking tort damages alleging bad faith and violations of the Texas Insurance Code and Deceptive Trade Practices Act.   At trial, the jury found Zurich knowingly engaged in unfair and deceptive practices and awarded $1.29 million on Parkans' tort claims. *Id.* at 516.   The Fifth Circuit reversed and noted that "the jury essentially found no tort injuries independent of the contract damage."   Per *Castaneda*, Parkans could not recover for extra-contractual damages for the claim denial.  *Id.* at 519.

2.25    The Fifth Circuit reiterated this rule in 2010 in *Great American Ins. Co. v. AFS/IBEX Financial Serv.*, 612 F.3d 800 (5th Cir. 2010) (the insured's assertion that a breach of contract entitled it to recover its extra-contractual claims "does not comport with this court's case law.").  There, the Court stated:

> In its briefing, [the insured] argues that it did not need to prove a separate injury in order to maintain its extra-contractual claims. It argues that [the insurer's] denial of insurance proceeds, standing alone, entitled it to recover on its extra-contractual claims. This assertion does not comport with this court's case law. *See Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (a Texas insurance dispute case, noting that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from wrongful denial of policy benefits").

*Id.* at 808 n.1.

**NOTICE OF REMOVAL - PAGE 15**

2.26    Therefore, Plaintiff's claims fail as a matter of law because the alleged damages merely consist of those that result from an alleged wrongful denial of policy benefits.  *See also Powell Electrical Systems, Inc. v. National Union Fire Ins. Co.*, C.A. No. H-10-993, 2011 WL 3813278 (S.D. Tex. Aug. 29, 2011)(Miller, J.).   The claim at issue, no matter how Plaintiff couches it in the lawsuit, is whether Western Heritage owes Plaintiff any additional amount for a covered loss.  Economic damages claims against the insurer do not automatically give rise to extra-contractual claims against independent adjusting companies or independent adjusters, individually. Therefore, Plaintiff's assertions against Cabrera, the non-diverse defendant, fail to show any reasonable likelihood of recovery against Cabrera, individually.  The citizenship of the non-diverse defendant, Cabrera, therefore, is disregarded and removal of this case is proper.

2.27    As explained by Judge Sidney Fitzwater of the United States District Court for the Northern District of Texas in his opinion in *One Way Investments, Inc. v. Century Surety Company, et al*., NO. 3:14-CV-2839-D (N.D. Tex. Dec. 11, 2014), the type of allegations alleged against Camp, all of which relate to his inspection and submission of an estimate of storm damage, are not actionable under the Texas Insurance Code because they do not relate to misrepresentations about coverage provided by the terms of the policy.[1]

2.28    Like this case, *One Way* involved a dispute over wind and hail damage to One Way's property.  *Id.* at *1.  Like the present matter, Century Surety Company, as One Way's property insurer, assigned VeriClaim as the independent adjusting company to inspect the property, and VeriClaim assigned Mattoni as the field adjuster.  *Id.* After a dispute arose over the scope of damages, One Way, filed suit against Century, VeriClaim, and Mattoni claiming the

---

[1] Attached as Exhibit 4.

**NOTICE OF REMOVAL - PAGE 16**

defendants misrepresented the damage to the property and committed various violations of the Texas Insurance Code. *Id*. at *2.

2.29    As Plaintiff has alleged with respect to Cabrera in this case, *One Way* alleged that the non-diverse independent adjuster Mattoni failed to conduct a reasonable investigation and substantially underestimated and underscoped the damages. *Id*. at p. 7. The court considered whether such allegations could support a claim under the sections of the Texas Insurance Code identified in One Way's state court petition and concluded they could not.

2.30    The conclusions reached by the courts in *One Way* and *Plascencia* are not isolated holdings either. Rather, there is a growing body of authority from other federal courts in Texas, also finding improper joinder of adjusters where the factual allegations against them fail to fit the criteria for an actionable claim under the Texas Insurance Code, and therefore, fail to provide fair notice of any actionable claims. *See*, *e.g.*, *Slabaugh v. AIG Insurance Company*, No. 4:15-cv-115, 2015 WL 4046250 (E.D. Tex. June 30, 2015) (holding that "it is undisputed that [the adjuster] inspected the property and provided AIG with an estimation of damages. There are no allegations that [the adjuster] misrepresented the coverage in any way or that Plaintiff relied on any misrepresentations to her detriment."); *Davis v. AIG Ins. Co. of Texas*, No. 4:14-cv-957-A, 2015 WL 456726 (N.D. Tex. Feb. 3, 2015); *Rodriguez v. AIG Ins. Co. of Texas*; No. 5:15-cv-143-C, in the United States District Court for the Northern District of Texas, Lubbock Division; *Dalton v. State Farm Lloyds*, No. H-12-3004, 2013 WL 3157532, at *19 (S.D. Tex. June 19, 2013); *First Baptist Church of Mauriceville, Tex. v. GuideOne Mut. Ins. Co.*, No. 1:07-CV-988, 2008 WL 4533729 at *6 (E.D. Tex. Sept. 29, 2008); *Broadway v. Brewer*, No. 4:08-cv-475, 2009 WL 1445449 at *3 (E.D. Tex. May 21, 2009); *Okenkpu v. AIG Tex. Lloyds*, No. H-11-2376, 2012 WL 1038678 (S.D. Tex. Mar. 27, 2012); *Gonzalez v. Homeland Ins. Co. of NY*, No. H-11-

**NOTICE OF REMOVAL - PAGE 17**

123, 2011 WL 3104104 (S.D. Tex. July 25, 2011); *Emmanuel Deliverance Temple of Refuge, Inc. v. Scottsdale Ins. Co.*, No. H-10-4162, 2011 WL 2837588 (S.D. Tex. July 18, 2011); *Glen Willows Apartments v. Lexington Ins. Co.*, No. H-10-2095, 2011 WL 1044206 (S.D. Tex. Mar. 16, 2011); *Centro Cristiano Cosecha Final*, No. H-10-1846, 2011 WL 240335 at *14 (S.D. Tex. Jan. 20, 2011); *Jimenez et al., v. Travelers Idem. Co., et al.,* No. H-09-1308, 2010 WL 1257802 (S.D. Tex. Mar. 20, 2010); *Studer v. State Farm Lloyds*, No. 4:13-cv-413, 2014 WL 234352 (S.D. Tex. Jan. 21, 2014); *Marquez v. AIG Texas Lloyds*, No. H-13-3644, 2014 WL 710952 (S.D. Tex. Feb. 24, 2014); *Nasti v. State Farm Lloyds*, No. 4:13-cv-1413, 2014 WL 710458 (S.D. Tex. Feb. 19, 2014) (where petition alleged that adjuster inspected subject property and submitted an undervalued estimate to insurer "the adjuster's actions are indistinguishable from the insurer's actions and hence are insufficient to support a claim against the adjuster"); *Van Tassel v. State Farm Lloyds*, No. 4:12-cv-3711, 2013 WL 5152324 (S.D. Tex. Sept. 11, 2013) (allegations that an inspector conducted a substandard investigation that led to an underpayment of claims found to be indistinguishable from claims against the insurer); *Rodolfo Barrera v. Allstate Insurance Company and Kevin Pakenham,* No. DR-16-CV-0037-AM-VRG (W.D. Tex Mar. 6, 2017).

2.31    These courts have consistently found improper joinder and declined to remand cases where, as here, the allegations against the adjuster were minimal, and only related to the scope and amount of damage, not the application of insurance coverage. *See, e.g., Dalton*, 2013 WL 3157532, at *19.   Accordingly, because Plaintiff's claims against Cabrera in this suit are nearly identical to the generic and conclusory claims in the authorities referenced above, and because the allegations simply cannot withstand scrutiny under Texas law, the Court should

conclude, as other courts have done in virtually identical circumstances before, that Cabrera has been improperly joined.

2.32    Finally, as the court explained in *Plascencia*, there does not appear to be any reason why Plaintiff needed to join Cabrera as a defendant other than to defeat diversity jurisdiction, and there is no suggestion or allegation that a recovery by Plaintiff against Cabrera would provide any financial gain or otherwise improve his ability to recover the damages alleged in the Original Petition.

2.33    For these reasons, Cabrera has been improperly joined.   Therefore, because Plaintiff is a citizen of Texas and Western Heritage is a citizen of Arizona, complete diversity of citizenship exists among the proper parties.

C.    THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL REQUIREMENTS FOR SUBJECT MATTER JURISDICTION.

2.34    The amount in controversy requirement for Federal diversity jurisdiction is clearly satisfied in this case as evidenced by Plaintiff' Original Petition in which Plaintiff expressly allege that the monetary relief sought is over $1,000,000.  *See* Original Petition at ¶ 2.  This amount clearly exceeds the jurisdictional requirements for subject matter jurisdiction, and demonstrates that the amount in controversy requirement is satisfied.

### III.
### THE REMOVAL IS PROCEDURALLY CORRECT

3.1    Defendant Western Heritage was served with Plaintiff's Original Petition and process on August 7, 2017.  Cabrera, improperly joined, has not been served.  Defendant files this notice of removal within the 30-day time period required by 28 U.S.C. § 1446(b).

3.2    Venue is proper in this District and Division under 28 U.S.C. §1446(a) because this District and Division include the county in which the state action has been pending and

because a substantial part of the events giving rise to Plaintiff's claims allegedly occurred in this District and Division.

3.3     Pursuant to 28 U.S.C. §1446(a), all pleadings, process, orders, and all other filings in the state court action are attached to this Notice.

3.4     Pursuant to 28 U.S.C. §1446(d), promptly after Defendant files this Notice, written notice of the filing will be given to Plaintiff, the adverse party.

3.5     Pursuant to 28 U.S.C. §1446(d), a true and correct copy of this Notice of Removal will be filed with the Clerk of the Bexar County District Court, promptly after Defendant files this Notice.

## IV.
## CONCLUSION

4.1     Based upon the foregoing, and other documents filed contemporaneously with this Notice of Removal and fully incorporated herein by reference, Defendant, Western Heritage hereby remove this case to this court for trial and determination.

**NOTICE OF REMOVAL - PAGE 20**

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:   */s/ D. Christene Wood*
     **D. Christene Wood**
     State Bar No. 24042188
     **George H. Arnold**
     State Bar No.:  00783559
     **Susan Sparks Usery**
     State Bar No.:  18880100
     One Riverway, Suite 1400
     Houston, Texas  77056
     Telephone:  (713) 403-8210
     Facsimile:   (713) 403-8299
     E-mail:  cwood@thompsoncoe.com
     E-mail:  garnold@thompsoncoe.com
     E-mail:  susery@thompsoncoe.com

     **COUNSEL FOR DEFENDANT**
     **WESTERN HERITAGE INSURANCE**
     **COMPANY**

## CERTIFICATE OF SERVICE

     I hereby certify that on this 6th day of September 2017, a copy of the foregoing was filed electronically and served on Plaintiff via the Courts ECF notice system as follows:

F. Blake Dietzmann
Rick Gonzales
LAW OFFICE OF F. BLAKE DIETZMANN
2317 N. Main
San Antonio, Texas 78212
Fax: 210-732-9919

                                   */s/ D. Christene Wood*
                                     D. Christene Wood