CERTIFIED MAIL #70160600000042385343

**Case Number: 2017-CI-13801**

2017CI13801  S00001

**JFMT PROPERTIES LLC**

vs.

**WESTERN HERITAGE INSURANCE COMPANY ET A**

(Note: Attached document may contain additional litigants).

IN THE DISTRICT COURT
407th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**CITATION**

**"THE STATE OF TEXAS"**

**DIRECTED TO:**   WESTERN HERITAGE INSURANCE COMPANY
BY SERVING THE PRESIDENT ANTHONY WASHINGTON OR HIS NOMINEE
OR ANY OTHER OFFICER

9200 E PIMA CENTER PARKWAY 350
SCOTTSDALE AZ 85258

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk  who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were  served this CITATION and ORIGINAL PETITION AND REQUEST FOR DISCLOSURE, a default judgment may be taken against you." Said  CITATION with ORIGINAL PETITION AND REQUEST FOR DISCLOSURE  was filed on the 28th day of July, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  1ST  DAY OF August  A.D., 2017.

FLOYD BLAKE DIETZMANN
ATTORNEY FOR PLAINTIFF
2317 N MAIN AVE
SAN ANTONIO, TX 78212-3448



**Donna Kay McKinney**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By : *Lilyana Esquivel,* Deputy

---

JFMT PROPERTIES LLC
vs
WESTERN HERITAGE INSURANCE COMPANY ET A

**Officer's Return**

Case Number: 2017-CI-13801
Court:407th Judicial District Court

Came to hand on the  1st day of August 2017, A.D., at 10:55 o'clock A.M. and EXECUTED (NOT EXECUTED) by CERTIFIED MAIL, on the _____ day of _____ 20_____, by deilvering to: _____ at 9200 E PIMA CENTER PARKWAY 350 SCOTTSDALE AZ 85258 a true copy of this Citation, upon which I endorsed that date of delivery, together with the accompanying copy of the CITATION with ORIGINAL PETITION AND REQUEST FOR DISCLOSURE.

Cause of failure to execute this Citation is _____.

**Donna Kay McKinney**
Clerk of the District Courts of
Bexar County, TX
By : *Lilyana Esquivel,* Deputy

Exhibit 2

ORIGINAL (DK003)

FILED
7/28/2017 7:04 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Krystal Gonzalez

2 CIT CML SAC2

CAUSE NO. **2017CI13801**

| | | |
|---|---|---|
| **JFMT PROPERTIES LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **vs.** | § | |
| | § | **407** **JUDICIAL COURT** |
| | § | |
| **WESTERN HERITAGE INSURANCE** | § | |
| **COMPANY AND ADAM CABRERA** | § | **BEXAR COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, JFMT PROPERTIES LLC, (hereinafter referred to as, "Plaintiff" or "JFMT"),

complaining of WESTERN HERITAGE INSURANCE COMPANY, (hereinafter referred to as,

"WESTERN"), and ADAM CABRERA., (hereinafter referred to as "CABRERA"), and files this, its

Original Petition and for cause of action would respectfully show unto the Court the following:

## I. DISCOVERY-CONTROL PLAN

1.    Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure

190.3 and affirmatively pleads that this suit is not governed by the expedited-actions

process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief over

$100,000.

## II. CLAIM FOR RELIEF

2.    Plaintiff seeks monetary relief over $1,000,000.00 (Tex. R. Civ. P. 47(c)(5).)

## III. VENUE

3.    Venue is appropriate in Bexar County, Texas because all or part of the action occurred in

Bexar County, Texas, and Plaintiff's office building, which the subject of this lawsuit is

located in San Antonio, Bexar County, Texas.

1

Exhibit 2

## IV. PARTIES

4.    Plaintiff, JFMT, is a Texas Limited Liability Company, which owns the office building, located at 8026 Vantage Dr., San Antonio, Texas 78230.

5.    Defendant, WESTERN, is a foreign insurance company, located in Scottsdale, Arizona, and engaged in the business of insurance in Texas. Defendant, WESTERN, **may be served with process by serving The President of the Company, Anthony Washington, or his Nominee, or Any Other Officer of the Company, by certified mail, return receipt requested: 9200 East Pima Center Parkway, Suite 350, Scottsdale, Arizona 85258.**

6.    Defendant, Adam Cabrera, is a natural person who resides in the State of Texas and **may be served with process, by certified mail, return receipt requested at 806 E. Dodge St., Stephenville, Texas 76401.**

## V. AGENCY AND RESPONDEAT SUPERIOR

7.    Whenever in this petition it is alleged that the Defendants did any act or thing, it is meant that Defendants themselves or their agents, officers, servants, employees, or representatives did such act or thing, and it was done with the full authorization or ratification of Defendants or done in the normal routine, course and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives.

## VI. CONDITIONS PRECEDENT

8.    All of the conditions precedent to bringing this suit under the policy and to the Defendants' liability to the Plaintiff under the policy for the claims alleged have been met or will be met.    All notices of loss were timely and properly given in such manner as to fully comply with the terms and conditions of the relevant insurance policies and

2

Exhibit 2

applicable law. In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, or requests, Defendant waived them. Defendant is estopped from asserting them, and/or the Plaintiff substantially complied with them, or is excused. Plaintiff makes the same allegation of waiver or estoppel, as to every defense or exclusion plead by Defendant, as to each claim for breach of contract or statutory violation as to Defendants. Plaintiff complied with all terms and conditions of the policy, but its claims were nonetheless denied and/or partially denied. Such denials/partial denials and refusals to pay waive any further compliance with said policy by Plaintiff, and leave it free to sue for those benefits to which it is entitled that were denied, partially denied or underpaid.

9.      This suit is brought pursuant to the law of good faith and fair dealing as well as under common law and Chapters 541 and 542 of the Texas Insurance Code; the Texas Deceptive Trade Practices Act; for breach of contract, recovery under a policy of insurance and for Attorney Fees. Plaintiff is a consumer of Defendant, Western, in that it purchased insurance from Defendant, Western, and/or service to be provided by Defendant, Western. Defendant, Western and Defendant, Cabrera, are individuals, corporations, associations, partnerships, or other legal entities engaged in the business of insurance. Defendant, Western, and Defendant, Cabrera, constitute persons as that term is defined in Chapter 541 of the Texas Insurance Code.

## VII. BACKGROUND FACTS

10.     Plaintiff is the owner of Insurance Policy No. SCP1504403-01, issued by Defendant, Western.

3

Exhibit 2

11. On or about April 12, 2016 a wind and hail storm caused damage to Plaintiff's office building, located at 8026 Vantage Dr., San Antonio, Texas, 78230.

12. On or about December 1, 2016, Plaintiff reported a claim to Defendant, Western, for roof leaks and HVAC damages. Thereafter, Defendant, Western, assigned Defendant, Cabrera, with Wardlaw Claims to adjust the loss.

13. On or about December 15, 2016, Defendant, Cabrera, along with Plaintiff's roof consultant, Tom McCoy, McCoy Consulting, inspected the hail damage to Plaintiff's roof structure. At said inspection, Defendant, Cabrera, represented to Plaintiff's roof consultant, Tom McCoy that he would pay for Plaintiff's roof and whatever was underneath the SPF roof layer.

14. On or about December 20, 2016, and January 17, 2017, Plaintiff's roof consultant, Tom McCoy, took a total of (3) core sample of Plaintiff's roof to determine: (1) what was under the SPF roof, and (2) the extent of moisture saturation due to water penetrating the roof structure.

15. On or about December 22, 2016, Defendant, Cabrera, prepared an estimate for the damages to Plaintiff's office building in the RCV amount of $172,113.09 and ACV amount of $143,877.49 based on Cabrera's December 15, 2016, improper, incomplete, sub-standard and inadequate investigation. Defendant, Cabrera's, representation that he/Western would pay for all the damages to Plaintiff's roof structure, including everything underneath the SPF roof turned out to be disingenuous, blatant misrepresentations and nothing more than empty promises, which Plaintiff relied on to its detriment.

4

Exhibit 2

16.    Defendant, Cabrera's, December 22, 2016 estimate only addressed the *1" inch SPF Foam Roof and failed to address everything beneath the SPF roof, including, but not limited to, the Two 3 Ply Asphalt Built Up Roof, the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete, and the (3) 30 Ton damaged Rooftop HVAC units.*

17.    Despite the fact that Defendant, Cabrera, completed his repair estimate in the RCV amount of $172,113.09 and in the ACV amount of $143,877.49 on December 22, 2016, neither Cabrera nor Western, sent Plaintiff a copy of Cabrera's estimate until January 18, 2017. In addition, Defendant, Western, did not issue payment for the undisputed monies until February 14, 2017, despite the numerous requests for the undisputed monies made by Plaintiff. Defendant, Western's, assurances that said monies would be sent via overnite once again turned out to be no more than empty promises.

18.    On or about January 20, 2017, Mr. McCoy, prepared a Roof/Core investigation report, which was sent to Defendant, Cabrera and Defendant, Western, consisting of the (3) Core Sample results, (47) photos of the Core Sampling and (2) Videos of the Core Sampling. Mr. McCoy concluded,

> "There is evidence from the three (3) core samples taken from the north, south and midway point between the two, that the roof consists of one inch of SPF roof, two 3 ply asphalt built up roofs and 3 ½ of lightweight concrete. **The lightweight concrete at all three core locations was saturated throughout the core.** The lightweight concrete was poured over a 24 gauge metal deck. **The saturation of the lightweight concrete requires its removal before a new roof system is installed."** *("emphasis added")*

19.    On or about January 23, 2017, Guerra-Prats Construction, prepared a repair estimate totaling $1,344,509.10 for all the damages to Plaintiff's office building, including, but not

5

Exhibit 2

limited to, the entire roof structure including the lightweight concrete decking, HVACs, interior damages and exterior damages to the building.   Mr. Guerra-Prats' estimate along with the J.R. Air Conditioning HVAC bid and Baldwin Roof bid was sent to Defendant, Cabrera, on January 23, 2017 by Email: Cabrera_adam@wardlawclaims.com.

20.    Thereafter, Defendant, Western, retained Donan Engineering to determine whether the roof surface and rooftop HVACs units were damaged by hail. Frank Miller, Jr. P.E., with Donan Engineering, along with Defendant, Cabrera, inspected/investigated Plaintiff's roof structure and HVACs on February 21, 2017. In addition, on or about February 20, 2017, the day prior to Mr. Frank Miller, Jr. P.E., Donan Engineering's, site inspection, Mr. Miller was provided with a copy of Plaintiff's Roof Consultant, Tom McCoy's, Roof/Core investigation report, roof core photos, roof core videos, as well as the roof replacement bid prepared by Baldwin Roofing.

21.    On or about February 28, 2017, Frank Miller, Jr. P.E., Donan Engineering, concluded as follows:

> "Hail impact damage has occurred to the surface of the SPF roof. A study of the SPF roofing reveal numerous hail punctures through the foam layer. A study of the roofing and **provided photographs** revealed the foam course of roofing to be approximately 1 ½ inches thick over several inches of assorted types of roofing built up on the roof deck." ("emphasis added")
>
> "While the existing SPF is able to be removed, and the historical roofing matrix allowed to dry before applying new SPF, the existing matrix under the SPF would reasonably leak in the event of rain during drying, allowing additional water into the roofing. **The most viable repair method is to remove the roofing to the roof deck and install a new roofing system."** ("emphasis added")
>
> "The HVAC system is not damaged by hail."

6

Exhibit 2

22.     On or about March 22, 2017, Defendant, Cabrera, prepared a Revised Estimate in the

        RCV amount of $283,042.40 and ACV amount of $246,125.74. Defendant, Cabrera's,

        revised estimate consisted of adding the additional layers of roofing and insulation

        beneath the SPF roof that had previously been determined by Tom McCoy's roof cores

        and documented in McCoy's 1/20/2017 Roof/Core investigation report, as well as,

        photographed and videoed by Mr. Tom McCoy.  McCoy's report further states, *"The*

        *lightweight concrete was poured over a 24 gauge metal deck.  The saturation of the*

        *lightweight concrete requires its removal before a new roof system is installed".*

## VIII. CAUSE OF ACTION FOR BREACH OF CONTRACT

        Plaintiff re-alleges and incorporates by reference all previous and subsequent

paragraphs herein for this cause of action.

        According to the Insurance Policy that Plaintiff purchased, Defendant, Western, has the

duty to investigate and pay Plaintiff policy benefits for claims made for covered damages,

including additional benefits under the Policy, resulting from a wind and hail storm. As a

result of an April 12, 2016 wind and hail storm and/or ensuing losses from the April 12, 2016

wind and hail storm, both of which are covered perils under the Policy, Plaintiff's property has

been damaged.

        Defendant, Western, breached the insurance policy/contract with Plaintiff by failing to

conduct a reasonable, adequate, thorough, and good-faith investigation of the damages to

Plaintiff's building.   Defendant, Cabrera's biased, substandard investigation, as well as

Cabrera's failure and refusal, as described above, to conduct a reasonable investigation and

to estimate all the of the covered damages, as Cabrera is obligated to do under the terms of

7

Exhibit 2

the Policy in question and under the laws of the State of Texas, constitutes a breach of Defendant, Western's, contract with Plaintiff. Defendant, Western's, failure to pay for all the covered damages to Plaintiff's building, as Defendant is obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of Defendant, Western's, contract with Plaintiff. In addition, Defendant, Western's, failure to timely pay Plaintiff for covered damages as required by the terms of Plaintiff's policy, constitutes a breach of contract. Furthermore, Defendant, Western and Defendant, Cabrera, failed to comply with the terms and conditions of the policy. As a result of Defendant, Western's and Defendant, Cabrera's acts and omissions, Defendant, Western, breached the contract with Plaintiff. As a result of Defendant, Western's breaches of contract, Plaintiff is entitled to attorney's fees under Chapter 38 of the Civil Practice and Remedies Code.

## IX. Cause of Action for Violation of Section 542

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein for this cause of action.

Defendant, Western, and Defendant, Cabrera's acts, omissions, failures and conduct that are described in this petition violate Section 542 of the Texas Insurance Code.

Defendant, Western, failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim, within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendant, Western's, conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.055.

8

Exhibit 2

Defendant, Western, failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Defendant, Western's, conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.056.

Defendant, Western, failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not received any payment for its claim. Defendant, Western's, conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.058.

From and after the time Plaintiff's claim was presented to Defendant, Western, the liability of Defendant, Western, to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant, Western, has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Defendant, Western's, conduct constitutes a breach of the common law duty of good faith and fair dealing.

Defendants, Western and Defendant, Cabrera, knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff, as evidenced by Defendant, Cabrera's, substandard, improper, inadequate, biased and outcome oriented investigations of Plaintiff's claim for damages to its building, more specifically,

   a.) Defendant, Cabrera's, December 22, 2016 repair estimate, which fails to address and or omits everything beneath the SPF roof, including, but not limited to, the Two 3 Ply

9

Exhibit 2

Asphalt Built Up Roof, the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete, and the (3) 30 Ton damaged Rooftop HVAC units;

b.) Defendant, Cabrera's, March 22, 2017 repair estimate, which fails to address the saturated 3 ½ inches of Lightweight Concrete; and

c.) February 28, 2017 Donan Engineering report, which states, "The most viable repair method is to remove the roofing to the roof deck and install a new roofing system."

As a result of Defendants, Western's and Cabrera's, wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorneys and law firms who are representing him with respect to these causes of action.

Plaintiff's experience is not an isolated case. The acts and omissions, Defendants, Western, and Cabrera, committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant, Western, with regard to handling these types of claims. Defendant, Western's, entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders. In addition, in the event it is determined that Defendants owe Plaintiff any additional monies on Plaintiff's claim, then Defendants have automatically violated Section 542 in this case.

## X. CAUSE OF ACTION FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein for this cause of action. By its acts, omissions, failures and conduct, Defendant, Western, has breached its common law duty of good faith and fair dealing by failing to conduct a fair and reasonable investigation and by failing to pay the proper amounts on Plaintiff's entire claim without any reasonable basis.

10

Exhibit 2

Defendant, Western, has also breached this duty by unreasonably delaying payment of Plaintiff's entire claim and by failing to settle Plaintiff's entire claim because Defendants, Western and Cabrera, knew or should have known that it was reasonably clear that Plaintiff's claim for the damages to the HVACs, and the entire roof structure, including, but not limited to, the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete were covered damages under the policy. When Defendant, Western, and Defendant, Cabrera, and their agents engaged in the acts and omissions stated in this petition and visited and inspected Plaintiff's property, in connection with Plaintiff's property damage, Defendant, Western, and Defendant, Cabrera, knew or should have known that Plaintiff had sustained significant damage to the property, requiring significant repairs as a result of a loss and peril covered by the insurance policy.

Defendant, Western and Defendant, Cabrera, knew that a substantial covered loss was owed. Nonetheless, Defendants, Western and Cabrera denied, delayed, and failed to pay and properly investigate some or all of Plaintiff's covered losses with no reasonable basis. Defendant, Western and Defendant, Cabrera have failed to act promptly or to conduct a good faith investigation, as evidenced by Defendant, Cabrera's, 12/15/2016 inadequate, unfair and substandard investigation, which failed to include the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete, which was the basis for Defendant, Western's, inadequate and improper payment for Plaintiff's damages.

These acts, omissions, failures, and conduct of Defendant, Western and Defendant, Cabrera, are a proximate cause of Plaintiff's damages.

11

Exhibit 2

## XI. CAUSE OF ACTION FOR UNFAIR INSURANCE PRACTICES

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein. Plaintiff incorporates all the allegations in this petition for this cause of action against Defendant, Western and Defendant, Cabrera, under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing this cause of action. By their acts, omissions, failures, and conduct, Defendant, Western and Defendant, Cabrera, have engaged in unfair and deceptive acts or practices in the business of insurance in violation of 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendant, Western's and Defendant, Cabrera's unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim and Defendant, Western's failure to pay for the proper repair of Plaintiff's building on which liability had become reasonably clear. They further include Defendants' failure to give Plaintiff the benefit of the doubt. Specifically, Defendants are guilty of the following unfair insurance practices:

### A. DEFENDANT, WESTERN

1. Defendant, Western's, conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a). All violations under this article are made actionable by Tex. Ins. Code §541.151.

2. Defendant, Western's, unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Defendant, Cabrera's, December 15, 2016 substandard, unfair, inadequate and outcome-oriented inspection/investigation, was the basis for Defendant, Western, denying Plaintiff's claim for the damages to Plaintiff's entire roof structure, including, but limited to the wet damaged layers underneath the SPF roof covering, including, the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete, as evidenced in Defendant, Cabrera's, December 22, 2016 repair estimate, as well as Cabrera's March 22, 2016 repair estimate. In addition, as evidenced by Defendant, Western's, February 14, 2017 indemnity payment failing to include any monies for the damaged HVAC units, as well as, the wet, damaged layers underneath the SPF roof covering, consisting of Two 3

Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete.      Tex. Ins. Code §541.060(a)(1).

3. Defendant, Western's, unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Western's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(2)(A).

4. Defendant, Western's, unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(3).

5. Defendant, Western's, unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(4).

6. Defendant, Western's, unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(7).

7. Defendant, Western's, unfair settlement practice, as described above, of failing to handle or process the Plaintiff's claims in good faith; is in violation of common law as expressly stated by the Texas Supreme Court in *Vail v. Texas Farm Bureau,* 754 S.W.2d 129 at 135 (Tex. 1988);

8. Defendant, Western's, conduct, as described above was irresponsible, unconscionable, a violation of the Texas Insurance Code and took advantage of Plaintiff's lack of sophistication in insurance matters to a grossly unfair degree, as evidenced by Defendant, Cabrera's,  December 22, 2016 repair estimate, as well as, Cabrera's December 15, 2016 substandard, unfair, inadequate and outcome-oriented inspection/investigation, which was the basis for Defendant, Western, denying Plaintiff's claim for the damages to the entire roof structure, including, but limited to, the wet damaged layers underneath the SPF roof covering, consisting of the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete.

## B. DEFENDANT CABRERA

1. Defendant, Cabrera's, conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a). All violations under this article are made actionable by Tex. Ins. Code §541.151.

13

Exhibit 2

2. Defendant, Cabrera, is individually liable for his unfair and deceptive acts, irrespective of the fact he was acting on behalf of Defendant, Western, because each is a "person" as defined by Tex. Ins. Code §541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or inter-insurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." Tex. Ins. Code §541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability).

3. Defendant, Cabrera's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Plaintiff's claim for the damages to its HVACs and roof structure, including, the wet damaged layers underneath the SPF roof covering, consisting of the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete were denied by Defendant, Western, based on the inadequate, unfair, substandard, and out-come oriented inspection/investigation performed by Defendant, Cabrera, as evidenced in Defendant, Cabrera's, December 22, 2016 repair estimate, as well as Cabrera's March 22, 2016 repair estimate. Further evidence of Cabrera's unfair settlement practices is Defendant, Western's, February 14, 2017 indemnity payment, which fails to include any monies for the damaged HVAC units, as well as, the wet, damaged layers underneath the SPF roof covering, consisting of Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete. Tex. Ins. Code §541.060(a)(1). Defendant, Cabrera's, disregard of obvious evidence of damages and failure to conduct a fair investigation of Plaintiff's claim for damages is actionable conduct under the Texas Insurance Code. Defendant, Cabrera, violated the Texas Insurance Code by misrepresenting the coverages afforded in Plaintiff's policy of insurance. In addition, despite, Defendant, Cabrera's, investigation/inspection and joint inspection with Plaintiff's roof consultant, Tom McCoy, revealing covered damages to Plaintiff's building, roof structure, and HVAC, Defendant, Cabrera, conveniently failed and/or omitted any damages to the HVACs and the damages to the layers of roof beneath the SPF roof coating and the saturated concrete deck. Defendant, Cabrera's, misrepresentations, failure to conduct a fair and adequate investigation and failure to treat the Plaintiff fairly is conduct actionable under the Texas Insurance Code.

4. Defendant, Cabrera's  unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance, as evidenced by Defendant, Cabrera's,  December 22, 2016 repair estimate, as well as, Cabrera's December 15, 2016 substandard, unfair, inadequate and outcome-oriented inspection/investigation, which was the basis for Defendant, Western, denying Plaintiff's claim for the damages to the entire roof structure, including, but limited to, the wet damaged layers underneath the SPF roof covering, consisting of the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete. Tex. Ins. Code §541.060(a)(2)(A).

14

Exhibit 2

5. The unfair settlement practice of Defendant, Cabrera, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(3).

6. Defendant, Cabrera's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(4).

7. Defendant, Cabrera's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance, as evidenced by, as evidenced by Defendant, Cabrera's, December 22, 2016 repair estimate, as well as, Cabrera's December 15, 2016 substandard, unfair, inadequate and outcome-oriented inspection/investigation, which was the basis for Defendant, Western, denying Plaintiff's claim for the damages to the entire roof structure, including, but limited to, the wet damaged layers underneath the SPF roof covering, consisting of the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete.  Tex. Ins. Code §541.060(a)(7).

## C. DEFENDANT, WESTERN AND DEFENDANT, CABRERA

Defendant, Western and Defendant, Cabrera, failed to conduct a fair and reasonable investigation. Instead of evaluation the damages to Plaintiff's building objectively, Defendant, Western and Defendant, Cabrera, looked for ways to underpay and deny as much of the covered damages of Plaintiff's claim, and conducted a pre-textual investigation, as evidenced by Defendant, Cabrera's, December 22, 2016 repair estimate, as well as, Cabrera's December 15, 2016 substandard, unfair, inadequate and outcome-oriented inspection/investigation, which was the basis for Defendant, Western, denying Plaintiff's claim for the damages to the entire roof structure, including, but limited to, the wet damaged layers underneath the SPF roof covering, consisting of the Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete that saturated the entire thickness of the concrete.

15

Exhibit 2

On or about December 15 2016, when Defendant, Cabrera, inspected and investigated Plaintiff's loss, along with Plaintiff's roof consultant, Tom McCoy, McCoy Consulting, it was reasonably clear that the damages to Plaintiff's roof structure(s) were more than superficial damages to Plaintiff's SPF Roof. In addition, it was reasonably clear to Defendant, Cabrera that the damages to the roof structure extended to the entire roof structure, including the layers of roof beneath the SPF Roof and the lightweight concrete roof decking. Furthermore, it was reasonably clear to Defendant, Cabrera that the water had penetrated through the entire roof structure causing interior leaks. It was also reasonably clear to Defendant, Cabrera, that the damages to Plaintiff's roof structure would prevent the roof from continuing to function as a barrier from the elements to the same extent as it did before the damage occurred.

Defendant, Western, and Defendant, Cabrera, violated the Texas Insurance Code by failing to fairly and reasonably adjust/investigate Plaintiff's storm/hail/water damages to Plaintiff's building, including, but not limited to, the interior, HVACs and the entire roof structure.

Defendant, Western and Defendant, Cabrera, also breached the Texas Insurance Code when they breached their duty of good faith and fair dealing.

All of the above-described acts, omissions, and failures of Defendant, Western and Defendant, Cabrera were done knowingly as that term is used in the Texas Insurance Code. These acts and omissions and failures are violations of Chapters 541 and 542 of the Texas Insurance Code. Defendant, Western, and Defendant, Cabrera, violated Chapters 542 of the Texas Insurance Code, and are liable for the actual damages, penalties and attorney's fees provided for therein. Defendant, Western, and Defendant, Cabrera's, conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

16

Exhibit 2

## XII. DTPA CAUSE OF ACTION

By their acts, omissions, failures, and conduct that are described in this petition, Defendant, Western, and Defendant, Cabrera, have violated Sections 17.46 (b)(2), (5), (7), (9), (12) and (24) of the DTPA. In this respect, Defendant, Western's and Defendant's Cabrera's violations include, without limitation, (1) their unreasonable delays in the investigation, adjustment, payments and resolution of Plaintiff's claim, (2) their failure to give Plaintiff the benefit of the doubt, and (3) their failure to pay for the proper repair for the damages to Plaintiff's building on which liability had become reasonably clear, as evidenced by Defendant, Cabrera's inadequate, unfair, substandard, and out-come oriented inspection/investigation, Cabrera's, December 22, 2016 repair estimate, as well as Defendant, Cabrera's March 22, 2016 repair estimate and Defendant, Western's, February 14, 2017 indemnity payment, which fails to include any monies for the damaged HVAC units, as well as, the wet, damaged layers underneath the SPF roof covering, consisting of Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete, based in Defendant, Cabrera's, improper, inadequate and out-come oriented investigation.

## A. DEFENDANT WESTERN - DTPA VIOLATIONS

As described in this petition, Defendant, Western, violated the Texas Deceptive Trade Practices Act, by representing to Plaintiff that Defendant, Western's insurance policy and Defendant, Western's, and Defendant, Cabrera's adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA;

As described in this petition, Defendant, Western, violated the Texas Deceptive Trade Practices Act, by representing to Plaintiff that Defendant, Western's insurance policy and

17

Exhibit 2

Defendant, Western's and Defendant, Cabrera's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

As described in this petition, Defendant, Western violated the Texas Deceptive Trade Practices Act, by advertising its insurance policy and adjusting and investigative services with intent not to sell them as advertised in violation of Section 17.46 (b)(9) of the DTPA;

As described in this petition, Defendant, Western represented to Plaintiff that Defendant, Western's insurance policy and adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which give Plaintiff the right to recover under Section 17.46 (b)(12) of the DTPA;

Defendant, Western has breached an express warranty that the damage caused by a wind/hail storm would be covered under the insurance policies. This breach entitles Plaintiff to recover under Sections 17.46 (b)(12) and (19) and 17.50 (a)(2) of the DTPA;

Defendant, Western's, actions, as described in this petition, are unconscionable and took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree, as evidenced by Defendant, Cabrera's inadequate, unfair, substandard, and out-come oriented inspection/investigation,  Cabrera's, December 22, 2016 repair estimate, as well as Defendant, Cabrera's March 22, 2016 repair estimate and Defendant, Western's, February 14, 2017 indemnity payment, which  fails to include any monies for the damaged HVAC units, as well as, the wet, damaged layers underneath the SPF roof covering, consisting of Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete, based in Defendant, Cabrera's, improper, inadequate and out-come oriented investigation.

18

Exhibit 2

Defendants, Western's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA;

Defendant, Western's, conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendant, Western and Defendant, Cabrera are a producing cause of Plaintiff's damages that are described in this petition. All of the above-described acts, omissions, and failures of Defendant, Western were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

## B. DEFENDANT CABRERA - DTPA VIOLATIONS

Defendant, Cabrera, violated the Texas Deceptive Trade Practices Act as described in this petition, by representing to Plaintiff that Defendant, Western's, insurance policy and Defendant, Western's, and Defendant, Cabrera's adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA;

As described in this petition, Defendant, Cabrera,   represented to Plaintiff that Defendant, Western's insurance policy and Defendant, Western's and Defendant, Cabrera's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

As described in this petition, Defendant, Cabrera, represented to Plaintiff that Defendant, Cabrera's insurance policy and adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which give Plaintiff the right to

19

Exhibit 2

recover under Section 17.46 (b)(12) of the DTPA;

Defendant, Cabrera's, actions, as described in this petition, were unconscionable and took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree, as evidenced by Defendant, Cabrera's inadequate, unfair, substandard, and out-come oriented inspection/investigation,  Cabrera's, December 22, 2016 repair estimate, as well as Defendant, Cabrera's March 22, 2016 repair estimate and Defendant, Western's, February 14, 2017 indemnity payment, which  fails to include any monies for the damaged HVAC units, as well as, the wet, damaged layers underneath the SPF roof covering, consisting of Two 3 Ply Asphalt Built Up Roofs, and the 3 ½ inches of Lightweight Concrete, based in Defendant, Cabrera's, improper, inadequate and out-come oriented investigation. Defendant, Cabrera, is liable to Plaintiff under the DTPA.  Defendant, Cabrera's, unconscionable conduct is a violation of the Texas Deceptive Trade Act.  Defendant, Cabrera's, misrepresentations, actions, inactions, and unconscionable conduct allows Plaintiff the right to sue Defendant, Cabrera, and seek relief under Section 17.50(a)(3) of the DTPA;

Defendant, Cabrera's, December 15, 2016 out-come oriented investigation was unfair, inadequate, and was carried out with a complete disregard for Plaintiff's rights to the insurance benefits afforded to Plaintiff under the policy of insurance with Defendant, Western. On or about December 15, 2016, Defendant, Cabrera, inspected Plaintiff's building with the preconceived objective to omit and/or deny as much of the damages as possible, despite knowing that all the damages to Plaintiff's building were covered under the commercial insurance policy Plaintiff purchased from Defendant, Western.  In addition, on December 15, 2016, Plaintiff's roof consultant, Tom McCoy, met Defendant, Cabrera, on the roof of Plaintiff's building and jointly inspected the extent of the damages and concluded that the roof structure

20

Exhibit 2

needed to be removed and replaced, as well as all the wet layers underneath the SPF roof. Furthermore, on December 15, 2016, it was reasonably clear that the damage to Plaintiff's roof structure was more than superficial damage to Plaintiff's SPF Roof. In addition, it was reasonably clear to Defendant, Cabrera that the damages to the roof structure extended to the entire roof structure, including the layers of roof beneath the SPF Roof and the lightweight concrete roof decking. It was also reasonably clear to Defendant, Cabrera that the water had penetrated through the entire roof structure causing interior leaks. Lastly, it was reasonably clear to Defendant, Cabrera, that the damages to Plaintiff's roof structure would prevent the roof from continuing to function as a barrier from the elements to the same extent as it did before the damage occurred. Defendant, Cabrera's unconscionable conduct gives Plaintiff the right sue Defendant, Cabrera, and seek relief under Section 17.50(a)(3) of the DTPA;

Defendant, Cabrera's, misrepresentations, conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendant, Cabrera, are a producing cause of Plaintiff's damages that are described in this petition. All of the above-described acts, omissions, and failures of Defendant, Cabrera, were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

## XIII. DAMAGES

The above described acts, omissions, failures and conduct of Defendant, Western and Defendant, Cabrera have caused Plaintiff damages which include, without limitation, the cost to properly repair Plaintiff's building and any investigative fees incurred in the claim. The conduct of Defendant, Western and Defendant, Cabrera, proximately caused the injuries and damages

21

Exhibit 2

to the Plaintiff for which it herein sues.

Plaintiff is also entitled to recover damages as well as Attorney's fees under Chapter 38 of the Civil Practice and Remedies Code for Defendant, Western's, Breach of Contract. Plaintiff is also entitled to recover the amount of its claim plus an 18% per annum penalty on that claim against Defendant, Western, as damages under Section 542 of the Texas Insurance Code, plus prejudgment interest and attorneys' fees. All the damages described in this petition are within the jurisdictional limits of the Court.

## XIV. ADDITIONAL DAMAGES

Defendant, Western and Defendant, Cabrera, have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Defendant, Western and Defendant, Cabrera, knowing and intentional misconduct, Plaintiff is entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA. In addition, the conduct of Defendant, Western, and Defendant, Cabrera, was committed knowingly, and therefore, under the circumstances constitutes willful and wanton and reckless disregard of the rights of the Plaintiff and others similarly situated. Plaintiff is further entitled to the additional damages that are authorized by Section 541 of the Texas Insurance Code.

## XV. EXEMPLARY DAMAGES

Defendant, Western, and Defendant, Cabrera's breach of their duty of good faith and fair dealing owed to Plaintiff was done intentionally, with a conscious indifference to the rights and welfare of Plaintiff and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendants are the type of conduct which the State of Texas protects its citizen against by the imposition of exemplary damages. Therefore,

22

Exhibit 2

Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendants for their wrongful conduct and to set an example to deter Defendants and others similarly situated from committing similar acts in the future.

## XVI. ATTORNEYS' FEES

As a result of Defendant, Western's and Defendant, Cabrera's conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and have agreed to pay reasonable attorneys' fees. Plaintiff is entitled to recover these attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

## XVII.

Plaintiff asserts all statutory claims, demands, and causes of action assertable under state law from the pleaded scenario and facts. Plaintiff seeks from Defendants actual, additional, exemplary damages, as well as all other damages and penalties available at law.

## XVIII. REQUEST FOR DISCLOSURE

Pursuant to Texas Rules of Civil Procedure 194 and 194.1, you are requested to disclose, within Fifty (50) days of service of this request, all of the information or materials described in Rule 194 and 194.2.

## XIX. PRAYER

Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff requests a jury trial and tenders the statutory jury fee to the Clerk of the Court, along with the filing of the Original Petition.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays, moves and respectfully requests this Honorable Court for the following relief:  That upon final hearing and trial hereof, the

23

Exhibit 2

Honorable Court grant to the Plaintiff all such relief as to which it may show itself justly entitled, either at law or in equity, either general or special, including declaratory judgment against Defendant, Western and Defendant, Cabrera, judgment against the Defendants for actual damages, attorney's fees, costs of suit, statutory penalties, and prejudgment and post judgment interest, if allowed by law, and including judgment for additional damages and punitive damages under the facts set forth in this or any amended pleading.

LAW OFFICE OF F. BLAKE DIETZMANN

By: _____

F. Blake Dietzmann
State Bar No. 00795321
Rick Gonzales
State Bar No. 24045955
2317 N. Main
San Antonio, Texas 78212
Telephone: (210) 732-9900
Telecopier: (210) 732-9919
Email: rickgo1@sbcglobal.net
**ATTORNEYS FOR PLAINTIFF**

24

Exhibit 2

# 68881

| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| BEXAR H A I L | § | |
| | § | BEXAR COUNTY, TEXAS |
| COMMERCIAL | § | |
| | § | |
| CLAIM LITIGATION | § | CIVIL JUDICIAL DISTRICT COURTS |

## STANDING PRETRIAL ORDER CONCERNING
## BEXAR COUNTY COMMERCIAL HAIL CLAIMS

This order applies to pretrial matters in commercial property insurance cases filed in the District Courts of Bexar County, Texas that involve insurance disputes arising from the hail storms occurring in Bexar County in April and May of 2016. The purpose of this order is to expedite pretrial matters, discovery and mediation in order to minimize court costs and litigation expenses.

This order shall be posted on the Bexar County District Clerk website and shall be attached to the Original Petition of applicable cases. All attorneys and parties should endeavor to notify others about this order.

Parties seeking to be excused from any part of this order must set a hearing and request relief from the court.

**AUTOMATIC ABATEMENT** – The filing of an original answer by the commercial insurance carrier shall trigger an immediate and automatic abatement. The case shall remain abated until 30 days after a mediation impasse.

The abatement period will apply to all court ordered deadlines and Rule 190 discovery deadlines. The abatement period will not apply to the deadlines in this order or to any statutory deadline, interest or penalties that may apply under any statutory code or law. The parties may send written discovery during the abatement time period, however, the responses and objections to those discovery requests will not be due until 30 days after the end of the abatement period.

**MEDIATION** – The parties shall agree to a mediator and to a mediation date. An Agreed Mediation Order, in the form attached, shall be filed with the court within 120 days after the answer is filed.

Within 15 days of an unsuccessful mediation, the parties will submit a proposed Agreed Scheduling Order to the court.

**DISCOVERY** – Within 120 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange information and documentation pertaining to the commercial property, including the following: expert reports, engineering reports, estimates of damage or repairs; contents lists for contents damage claim(s); photographs; repair receipts or invoices; the non-privileged portions of the commercial insurance carrier and adjusting company's claims file (including all claim diary notes, activity logs, loss notes and email correspondence regarding the insurance claim); payment ledger, payment log and/or proof of payment from the insurance carrier; a copy of the insurance policy in effect at the time of the respective storm claim(s); and the non-privileged portions of the underwriting file. If the insurance carrier is not in possession of the adjusting company's/adjuster's claims file, and the adjusting company/adjuster is not named as a party in the lawsuit and represented by separate counsel, then the insurance carrier shall seek the adjusting company's claims file and use their best efforts to exchange this information within the 120 day time period. The insurance carrier is also ordered to notify

68881

the independent adjusting company that all emails, activity notes and loss diary notes pertaining to the hail storm claim in litigation shall be preserved and not destroyed. Finally, a privilege log will also be produced in accordance with the Texas Rules of Civil Procedure for any redactions or privileges asserted. Within 180 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange accounting and financial documentation and other information pertaining to any claims for business interruption, loss of business income, lost profits, inventory or food loss (provide list with values), lost business expense, accounts receivable and any other business loss claim.

Any expert reports, engineering reports, contractor estimates or any other estimates of damages or repairs obtained pursuant to this order for settlement, demand, or mediation purposes and exchanged prior to mediation shall be for mediation purposes only and shall be considered confidential, except that any estimates and/or reports that are part of the claims file, which were obtained or prepared during the claims handling, shall not be considered confidential under this paragraph. However, if a consultant, whose report is produced for mediation, is designated as a retained testifying expert and does not produce a subsequent report for use at trial, the mediation report shall not remain confidential.

Confidential reports and estimates are only confidential for the lawsuit in which they are being used. Confidential expert reports designated for mediation purposes shall be returned to the providing party within 14 days of a written request. Such reports shall not be discoverable or admissible at trial or any hearing. If the party procuring the report designates the expert to testify, such party shall have the right to prevent discovery or testimony by the expert regarding the mediation report and any opinions therein, provided that a subsequent report is produced. The procuring party may use data such as measurements and photographs without waiving this privilege. Nothing herein shall prohibit the use of those reports and estimates in any subsequent insurance claims or lawsuits involving the same commercial insurance carrier.

Once a mediation date and mediator are agreed to by all parties, the commercial insurance carrier shall be permitted to inspect the property involved in the lawsuit (as soon as practicable) prior to mediation. If mediation is unsuccessful, the commercial insurance carrier and other defendants may re-inspect the property with the same, new or additional experts pursuant to the Texas Rules of Civil Procedure.

Signed on November 30, 2016

Michael Mery, Judge
37th District Court

Stephani Walsh, Judge
45th District Court

Antonia Arteaga, Judge
57th District Court

David A. Canales, Judge
73rd District Court

2

Exhibit 2

68881

68881

John D. Gabriel, Jr., Judge
131st District Court

Renée Yanta, Judge
150th District Court

Laura Salinas, Judge
166th District Court

Cathleen Stryker, Judge
224th District Court

Peter Sakai, Judge
225th District Court

Richard Price, Judge
285th District Court

Sol Casseb III, Judge
288th District Court

Karen H. Pozza, Judge
407th District Court

Larry Noll, Judge
408th District Court

Gloria Saldaña, Judge
438th District Court

68881

Exhibit 2

# 68881

## AGREED MEDIATION ORDER

Pursuant to the Standing Pretrial Order Concerning Bexar County Commercial Hail Claims, the parties agree to the following mediation date and mediator:

Date: _____

Mediator: _____

The court, hereby, approves and orders the above date and mediator as agreed by the parties.

Each side shall pay an equal portion of the mediation fee.

All parties must have in attendance a representative with full authority to enter into a final settlement agreement. The following shall be personally in attendance at the mediation until excused by the mediator:

1.  An attorney of record for each party, unless the party is self-represented.

2.  All individual parties, either plaintiff or defendant, except that individual defendant adjusters and insurer employee defendants are not ordered to attend so long as a representative with full authority to negotiate and settle on their behalf is present.

3.  A representative of each non-individual party, unless the parties agree otherwise in writing.

Signed and entered on _____, 2016.

_____
Judge Presiding

11/30/2016 VOL 4635 PG 1819

4   **68881**

Exhibit 2



ZIP 78205 $ 008.13⁰
02 4W
0000350844 AUG 03 2017

7016 0600 0000 4236 5343



WESTERN HERITAGE INSURANCE COMPANY
C/O ANTHONY WASHINGTON
9200 E PIMA CENTER PARKWAY 350
SCOTTSDALE, AZ 85258

2017CI13601  8/1/2017  CITCM  LILYANA ESQUIVEL

...AY MENNING...
...TY DISTRICT CLERK
...IZONDO TOWER
...EVA ST., SUITE 217
...IO, TX 78205-3411
SERVICE REQUESTED

Exhibit 2

FILED
9/5/2017 12:44 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Isaias Ibarra

Case 5:17-cv-00859-DAE   Document 1-4   Filed 09/06/17   Page 31 of 38

## CAUSE NO. 2017CI13801

| | | |
|---|---|---|
| JFMT PROPERTIES LLC | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v | § | BEXAR COUNTY, TEXAS |
| | § | |
| WESTERN HERITAGE INSURANCE | § | |
| COMPANY AND ADAM CABRERA, | § | |
| *Defendants.* | § | 407th JUDICIAL DISTRICT |

### DEFENDANT WESTERN HERITAGE INSURANCE COMPANY'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, <u>SPECIAL EXCEPTIONS, AND VERIFIED PLEA IN ABATEMENT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Defendant Western Heritage Insurance Company ("Western Heritage" or "Defendant") and files this, its amended answer with affirmative defenses, and special exceptions, and would respectfully show as follows:

## I. <u>ORIGINAL ANSWER</u>

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies the allegations contained within Plaintiff's Original Petition and demand strict proof thereon by a preponderance of the credible evidence in accordance with the laws of the State of Texas.

## II. FIRST AFFIRMATIVE DEFENSE <u>Failure of Conditions Precedent</u>

2.      Pleading further and without waiver of the above, Defendant denies the occurrence of all conditions precedent to Plaintiff's claim.  Defendant also specifically denies that Plaintiff has provided the required written notice under Section 17.505 of the Texas Business & Commerce Code and/or Section 541.154 of the Texas Insurance Code at least 60 days prior to filing suit.

3.      Pleading further and without waiver of the above, Defendant denies the occurrence of all conditions precedent to Plaintiff's claim.  Without limiting the foregoing, Defendant denies that there has been full compliance with all terms and conditions of the insurance policy at issue as required prior to Plaintiff bringing suit, including, but not limited to, the requirement that Plaintiff give Western Heritage "prompt written notice" of the loss at issue.

4.      Plaintiff did not report the loss to Western Heritage until <u>eight</u> months after the loss date.  Specifically, on or about December 5, 2016, Plaintiff reported a wind/hail loss which reportedly occurred on April 12, 2016.  Western Heritage's investigation of the loss was prejudiced by Plaintiff's late notice in reporting as the passage of time and multiple rain events impeded Western Heritage's ability to inspect same at the time when the damage reportedly occurred or even shortly thereafter.

### III.  SECOND AFFIRMATIVE DEFENSE
### <u>Failure to State a Claim</u>

5.      Plaintiff's causes of action are barred, either in whole or in part, because it failed to state a claim upon which relief can be granted.  Specifically, Plaintiff failed to describe how Western Heritage's alleged breach of contract converts Plaintiff's contractual claim into a cause of action against Defendants for alleged violations of the Insurance Code, the DTPA, or bad faith.  Plaintiff's petition instead merely recites provisions of the Insurance Code and DTPA and generically alleges that Defendants violated same.  Absent any specific factual allegations of acts or omissions constituting a tort causing independent injury to Plaintiff, the petition does not support a claim upon which relief can be granted.  Plaintiff's asserted extra-contractual claims against Cabrera, individually, and Western Heritage are barred under the independent injury rule as the claims seek damages solely attributable to Western Heritage's alleged contractual breach.  Further, Plaintiff's alleged misrepresentation claims are without merit as Western Heritage's

DEFENDANT'S ORIGINAL ANSWER – PAGE 2

communications about the claim were with Plaintiff's counsel.  As a result, Plaintiff has failed to plead any actionable misrepresentation-based claims against Western Heritage.

## IV.  THIRD AFFIRMATIVE DEFENSE
### Damage Limitation

6.      Plaintiff's damages, if any, are limited by the amount set forth in the insurance coverage limits of the Policy at issue.

## V.  FOURTH AFFIRMATIVE DEFENSE
### Liability Not "Reasonably Clear"/*Bona Fide* Controversy

7.      As to Plaintiff's claims alleging common law and statutory bad faith against Defendants, a *bona fide* controversy existed and continues to exist concerning the scope and amount of the allegedly covered loss and Plaintiff's entitlement to insurance benefits under the Policy.  Defendants possess the right to investigate questionable claims without facing bad faith liability. Defendants investigated Plaintiff's claim, including retaining an engineer to provide opinions as to causation of damages claimed by Plaintiff.  The Policy excludes damages claimed by Plaintiff and the coverage dispute is a *bona fide* controversy between the Parties. To the extent the Parties also disagree as to the amount of covered damage, a *bona fide* dispute exists barring Plaintiff's extra-contractual claims.

## VI.  FIFTH AFFIRMATIVE DEFENSE
### Punitive Damage Limitation

8.      With respect to Plaintiff's claim for damages, any award of punitive damages must be limited to the greater of:  (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practices & Remedies Code §41.002-41.009.

## VII.  SIXTH AFFIRMATIVE DEFENSE
### Policy Terms

9.       Defendant pleads the warranties, terms, definitions, provisions, conditions, exclusions and limitations of the Policy as if such were fully set forth herein, *in extenso*.  Under Texas law an insured has a duty to read an insurance policy and is charged with knowledge of its contents.   Western Heritage asserst that any claim which is based upon a representation, inducement, or reliance on a representation fails as a matter of law, since Plaintiff is charged with knowledge of the contents of the insurance policy at issue.

10.       The Policy provides coverage for loss or damage to Plaintiff's property caused by covered perils.  To the extent Plaintiff's claimed damages are caused by unnamed or excluded perils, or were caused outside the applicable coverage period, Plaintiff's claims for same are barred.

## VIII.   SEVENTH AFFIRMATIVE DEFENSE
### Fortuity Doctrine

11.       To the extent that Plaintiff seeks compensation for property damages that pre-existed the date of loss at issue in this lawsuit, Defendant pleads that such damages are barred by the fortuity doctrine which bars known losses or losses in progress.  Under the fortuity doctrine, coverage is precluded where the Plaintiff is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased.  To the extent that Plaintiff seeks amounts from Defendant for damages from settlement, wear, tear and deterioration, pre-existing damages, or lack of maintenance which occurred prior to the inception of the policy, such damages are barred.

## IX.  DEMAND FOR JURY TRIAL

12.       Defendant demands a jury trial in this case.

DEFENDANT'S ORIGINAL ANSWER – PAGE 4

## X.      SPECIAL EXCEPTIONS

13.      Defendant specially excepts to Plaintiff's Original Petition because it fails to identify facts which support Plaintiff's common law or statutory bad faith claim against Defendant.  Plaintiff has not identified any facts regarding any breach of the duty of good faith and fair dealing by Western Heritage or any damages caused by such breach which are separate and apart from the damages Plaintiff claims pursuant to its alleged contractual breach claim against Western Heritage.  Further, Plaintiff's representative was present during the inspection by Cabrera. Plaintiff's counsel reported the claim at issue and all communications about the claim were made to Plaintiff's counsel or Plaintiff's representative. Plaintiff has not pleaded sufficient facts which would indicate what, if any, misrepresentations were made to Plaintiff, how Plaintiff relied on same to its detriment, or how any such misrepresentations were the producing cause of any damages to Plaintiff.

14.      Accordingly, Plaintiff should be required to file an amended pleading which sets forth facts and evidence in support of Plaintiff's claims for alleged breach of contract, bad faith, and alleged violations of the Insurance Code and alleged violations of the Deceptive Trade Practices Act, as well as the maximum alleged damages related thereto.

## XII. VERIFIED PLEA IN ABATEMENT

15.      The Court should abate the lawsuit pursuant to Section 541.154 of the Texas Insurance Code which requires that, as a prerequisite to filing a suit seeking damages under the Texas Insurance Code, the person seeking damages must give written notice to the defendant at least 60 days before filing suit.  The notice must inform the defendant of the specific complaint and the amount of actual damages and expenses, including any attorney's fees, reasonably

DEFENDANT'S ORIGINAL ANSWER – PAGE 5

incurred in asserting the claim against the defendant. TEX. INS. CODE §541.154(b); TEX. BUS. & COMM. CODE § 17.505(a).

16.     Plaintiff commenced this action on July 28, 2017. Plaintiff did not provide Western Heritage with the statutorily required notice prior to commencing this action.

17.     When a plaintiff does not provide pre-suit notice, or if their notice letter is deficient, the proper remedy is abatement.[1]  If the motion to abate is not controverted by an affidavit filed before the 11th day after the plea in abatement is filed, the suit is automatically abated without court order beginning on the 11th day after the date the plea in abatement is filed. TEX. INS. CODE §541.155(c); TEX. BUS. & COMM. CODE § 17.505(d).  If the motion to abate is controverted by affidavit, and, after a hearing, the court finds the notice insufficient, there is no discretion – the court must abate the action.  *See* TEX. INS. CODE § 541.155(b); TEX. BUS. & COMM. CODE § 17.505(d).  The abatement continues until the 60th day after the date that written notice is served in compliance with Insurance Code section 541.154 and DTPA section 17.505(a).  TEX. INS. CODE § 541.155(d); TEX. BUS. & COMM. CODE §17.505(e).  State and federal courts in Texas routinely abate suits under the Texas Insurance Code or DTPA for failure to comply with the notice requirement.[2]

18.     As Plaintiff failed to provide the statutorily required notice prior to commencing this action, Defendant requests that this Court exercise its discretion and abate this suit until 60 days after Plaintiff provides sufficient notice of his damages, expenses and attorneys' fees incurred,

---

[1] *See Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996); *Nichols*, 2010 WL 1576694, at *3 (S.D. Tex. 2010) (abating case when Plaintiff failed to provide pre-suit notice); *In re Liberty Mut. Ins. Co.*, 2010 WL 1655492, at *6 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (mem. op.).

[2] *See, e.g., Nichols*, 2010 WL 1576694 at *3; *In re Liberty Mut.*, 2010 WL 1655492 at *6; *Encore Bank v. ACE Am. Ins. Co.*, 2009 WL 1396130 at *2 (S.D. Tex. 2009); *In re Behr*, 2006 WL 468001 at *3 (Tex. App.—San Antonio 2006, no pet.) (mem. op., not designated for pub.); *Cleo Bustamante Enters., Inc. v. Lumbermens Mut. Cas. Co.*, 2005 WL 1586994 at *1 (W.D. Tex. 2005).

DEFENDANT'S ORIGINAL ANSWER – PAGE 6

the requested documentation regarding amount(s) spent on reasonable and necessary repairs, a description of the alleged damages, and the bases for his causes of action under the Insurance Code.

## <u>CONCLUSION AND PRAYER</u>

19.     WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that this action be abated in its entirety until 60 days after Plaintiff serves adequate notice of its claims under the Texas Insurance Code chapter 541, which would include providing Defendant with documentation establishing that a storm event occurred on the date as reported, any amounts are owed for covered repairs, as well as the specific amount alleged to be owed for economic damages and amounts incurred for reasonable and necessary attorneys' fees, and, if no adequate notice is served on Defendant within 30 days of the abatement inception, Defendant asks the Court to dismiss Plaintiff's Chapter 541 and DTPA claims without prejudice to allow the parties to proceed with resolving this dispute pursuant to the terms of the agreement between the Parties—the Policy.

20.     Defendant further prays that Plaintiff be ordered to file an amended pleading which sets forth facts and evidence in support of Plaintiff's claims for alleged breach of contract, bad faith, and alleged violations of the Insurance Code and DTPA, as well as the maximum alleged damages related thereto. Defendant further prays that Plaintiff take nothing on its claims against Defendant, that Western Heritage recover its costs herein, and that it receive such other and further relief, general or special, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:   */s/ D. Christene Wood*
      **D. Christene Wood**
      State Bar No. 24042188
      **George H. Arnold**
      State Bar No.:  00783559
      **Susan Sparks Usery**
      State Bar No.:  18880100
      One Riverway, Suite 1400
      Houston, Texas  77056
      Telephone:  (713) 403-8210
      Facsimile:   (713) 403-8299
      E-mail:  cwood@thompsoncoe.com
      E-mail:  garnold@thompsoncoe.com
      E-mail:  susery@thompsoncoe.com

      **ATTORNEYS FOR DEFENDANT**
      **WESTERN HERITAGE INSURANCE**
      **COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that on the 1st day of September, 2017, a true and correct copy of the foregoing document was delivered to all counsel of record, via facsimile, email or certified mail, return receipt requested, in accordance with the Texas Rules of Civil Procedure:

F. Blake Dietzmann
Rick Gonzales
LAW OFFICE OF F. BLAKE DIETZMANN
2317 N. Main
San Antonio, Texas 78212
Fax: 210-732-9919

*Attorneys for Plaintiff*

                */s/ D. Christene Wood*
                D. Christene Wood

Exhibit 2